## CUNNINGHAM v. PEIRCE.

(Supreme Court, Appellate Division, Second Department. March 22, 1906.)

**1. MASTER AND SERVANT—NEGLIGENCE OF MASTER—DEFECTIVE SCAFFOLDING.**

Under the labor law, an employer has performed his duty as to scaffolding, when he has constructed one sufficiently strong in its materials and construction to remain in position while in use, though, when one working thereon sets his wheelbarrow down and throws his weight on one of the outside planks, it sags an inch.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 207.]

**2. SAME—DEFECTIVE IMPLEMENTS.**

Though a wheelbarrow furnished by a master to an employé engaged in wheeling cement onto a scaffolding, and unloading it by shoveling it to a platform above, is so constructed as to be top-heavy when loaded, the master is not liable as for not furnishing a safe appliance, where, the employé having set the wheelbarrow down and thrown his weight on one of the outside planks of the scaffolding, it sagged about an inch, and the wheelbarrow, a leg of which was on the plank, tipped, and threw the employé, who was standing between the handles.

Hirschberg, P. J., and Rich, J., dissenting.

Appeal from Trial Term, Kings County.

Action by Bernard Cunningham against John Peirce. From a judgment for plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Richard B. Aldcroftt, Jr., and James B. Henney, for appellant. Charles F. Brandt, for respondent.

WOODWARD, J. The plaintiff was employed as a common laborer, engaged in taking loaded wheelbarrows from an elevator, rolling them along an elevated platform or scaffolding upon the seventh floor of a building in course of construction, and then unloading the same with a shovel, throwing the load, consisting of cement on the occasion of this accident, upon a platform some six or seven feet above that on which the wheelbarrow was standing. The accident, according to the plaintiff's testimony, which has been accepted by the jury, occurred while the plaintiff was shoveling the cement out of his wheelbarrow. It appears from the evidence that the platform was made of spruce scaffolding planks about 23 feet long, 12 inches wide, and 3 inches thick, supported at intervals of 10 or 12 feet by "horses." There were three of these planks placed side by side, and the evidence is undisputed that this scaffolding was a suitable scaffolding, strong enough, and built so that it did not fall. The only defect alleged in reference to this scaffolding is that, when the plaintiff set his wheelbarrow down and threw his weight upon one of the outside planks, it sagged about an inch, and, the wheelbarrow leg or support being upon this plank, it tipped over. The plaintiff was between the handles of the wheelbarrow, and was in the act of throwing a shovelful of the cement on the platform above, and the turning of the wheelbarrow threw him off from the scaffolding, precipitating him through a hole in the floor to the floor below, where he sustained injuries for which the jury has awarded him

a verdict of $500. The defendant appeals from the judgment entered upon such verdict.

It seems entirely clear that the labor law never contemplated a fanciful degree of safety in a scaffolding erected for temporary purposes, and that the requirements of the statute are fully met when the master has created a scaffolding which is sufficiently strong in its materials and construction to remain in position, while it is in use for the purpose for which it is designed. The plaintiff seems to practically concede that this is the fair construction of the law, for little is predicated upon this feature of the case; stress being laid upon the alleged defects in the wheelbarrow, which permitted it to overturn, to the plaintiff's injury. The wheelbarrow described in the evidence is what is commonly known as a "Paddy's Gig," and consists of two handles, spreading 22 inches to 2 feet, and then running down to 8 or 10 inches to the point where the wheel is inserted; the same being surmounted by a sort of scoop-shaped body. There was considerable testimony in reference to alleged defects in this wheelbarrow, but the witnesses do not agree as to the defects, nor do any of them, so far as we are able to discover, show that the accident was due to any one of the alleged defects. The evidence does not attempt to show that any other style of wheelbarrow would have been safer, or would not have overturned under the same circumstances, though the plaintiff does suggest in his evidence that he had been used to a different style of wheelbarrow; but what this style was, or in what respect it would have prevented the accident, if the defendant had supplied the style which the plaintiff had previously used, does not appear. There is a suggestion that the scoop or body of this particular wheelbarrow was too high; that it was, when loaded, top-heavy. But in this respect it does not appear to have differed from the general run of this simple implement, and the top-heaviness, if it existed, was due, no doubt, to the method of loading, rather than to any inherent defect in the construction, of the wheelbarrow, which it was the duty of the master to take notice of in fulfilling his duty of supplying reasonably safe tools and appliances for the work to be done.

After giving full weight to the discussion of counsel, in an effort to distinguish the facts in this case from the principle enunciated in Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56, we are unable to discover any proper line of demarcation. In the case cited, which has been followed in many instances, and has the weight of authority, it was said that:

"Where persons are employed in the performance of ordinary labor, in which no machinery is used, and no materials furnished, the use of which requires the exercise of great skill and care, it can scarcely be claimed that a defective instrument or tool furnished by the master, of which the employé has full knowledge and comprehension, can be regarded as making out a case of liability within the rule laid down. A common laborer, who uses agricultural implements while at work upon a farm or in a garden, or one who is employed in any service not requiring great skill and judgment, and who uses the ordinary tools employed in such work, to which he is accustomed and in regard to which he has perfect knowledge, can hardly be said to have a claim against his employer for negligence, if, in using a utensil which he knows to be defective, he is accidentally injured."

If the plaintiff had been engaged in working on a farm and had used a wheelbarrow to carry a fertilizer upon a scaffolding that he might

throw it over a wall, and this same accident had happened to him, would the master be liable? Hardly. Why then should the master be liable here? All of the defects in the wheelbarrow, if they existed, were equally obvious to the plaintiff as to the defendant, and, beyond this, the accident was not one which the defendant was bound to anticipate would result from any defect which is alleged against this particular wheelbarrow. The truth is that the wheelbarrows of the class in use are designed for easy dumping, they are intended for a crude form of work, and their efficiency would be very largely reduced if the legs or rests under the body were as wide as the wheelbarrow. Indeed, they would be too cumbrous to be used. This accident happened, no doubt, because the load upon the wheelbarrow was so placed that, when the plaintiff set it down upon the planks, the greater part of the weight was upon the outside plank. When the plaintiff, in the act of throwing the shovelful of cement to the platform above, threw his whole weight upon the outside plank, there was a slight spring downward, and the wheelbarrow dropped over in that direction. If the wheelbarrow had been placed a little differently, so that the excess of weight had been on the second or third plank, the accident would not have happened, and it was not the duty of the master to anticipate the accident which has happened, for that was one of the details of the work, and the danger was one which was always as obvious to the plaintiff as it could have been to the master.

The judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event.

JENKS and MILLER, JJ., concur. HIRSCHBERG, P. J., and RICH, J., vote for a modification of the judgment by striking out the provision for an extra allowance, for want of power in the trial court to grant the same, and, as modified, for the affirmance of the judgment and order, without costs.